IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FLORIDA POWER AND LIGHT COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98-483C |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO
THE COURT'S ORDER DATED MARCH 21, 2005

Defendant, the United States, respectfully submits this response to the Court's order dated March 21, 2005. In that order, the Court requested that the parties address two specific questions relating to the plaintiff's motion for reconsideration of the Court's January 31, 2005 opinion, in which Judge Sypolt found that this Court lacks jurisdiction to entertain the plaintiff's contract claims and that those claims should be transferred to the United States Court of Appeals for the District of Columbia Circuit. We address those questions in reverse order.[1]

---

1/ Although not identified in the Court's March 21, 2005 order, the Court, during the parties' status conference with the Court on March 16, 2005, had asked whether Judge Sypolt's January 31, 2005 order transferring the plaintiff's contract claims could be directly appealable to the appellate court, outside the context of a petition for permission to appeal an interlocutory order. Transcript, at 5-6. After investigating that issue, it appears that, in fact, her order is not appealable as a matter of right at this time. "Generally, a transfer order is interlocutory and thus not immediately appealable, but appealable only incident to a final judgment in a case . . . or as a certified question pursuant to 28 U.S.C. § 1292(b) (1994)." FDIC

## DISCUSSION

THE COURT'S QUESTION: The effect of the assignment of a new judge upon the standards for a motion to reconsider under the U.S. Court of Federal Claims Rule 59. For example, to what extent may a new judge revisit issues; to what extent must a new judge disagree with the prior decision in order to grant a motion to reconsider; and can a new judge decide the issue *de novo*?

### I. THE LEGAL STANDARDS FOR SEEKING RECONSIDERATION OF A COURT'S OPINION PURSUANT TO RCFC 59 ARE STRICT

Motions for reconsideration in this Court are governed by RCFC 59 and "are granted at the sole discretion of the court – not as a matter of right." CW Gov't Travel, Inc. v. United States, 63 Fed. Cl. 459, 462 (2005); see Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir.1990); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd, 250 F.3d 762 (Fed.

---

v. Maco Bancorp, Inc., 125 F.3d 1446, 1447 (Fed. Cir. 1997). Nevertheless, certain transfer orders are immediately appealable to the United States Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. § 1292(d)(4)(A), which "grants [the Federal Circuit] exclusive jurisdiction to hear certain appeals of certain transfer orders, notwithstanding their interlocutory nature." Maco Bancorp, 125 F.3d at 1447. Specifically, Section 1292(d)(4)(A) of Title 28 of the United States Code gives the Federal Circuit jurisdiction to review "interlocutory order[s] of a district court of the United States . . . granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims" under 28 U.S.C. § 1631. 28 U.S.C. § 1292(d)(4)(A) (emphasis added). However, that statute does not appear to grant that same right of immediate appeal over interlocutory transfer orders from this Court to another court. The only authority that we have found directly addressing that precise issue is an unpublished opinion from the Federal Circuit that is not citable as precedent, Duszak v. United States, No. 04-5048, 104 Fed. Appx. 738 (Fed. Cir. July 13, 2004).

Cir.2000).[2] "A showing of extraordinary circumstances is necessary before a party may prevail on its motion for reconsideration." CW Gov't, 63 Fed. Cl. at 462. "This showing, under RCFC 59, must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." Fru-Con Constr., 44 Fed. Cl. at 300 (emphasis added). A "manifest" error is an error that is "[e]vident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident." Black's Law Dictionary 867 (5th ed. 1979) (defining "manifest").

Generally, to establish a basis for reconsideration under RCFC 59, "the movant must show: (1) that an intervening change in the controlling law has

---

[2/] This Court's Rule 59 differs from Rule 59 of the Federal Rules of Civil Procedure ("FRCP"). FRCP 59 applies only to requests for new trials and motions to alter or amend a previously issued judgment. However, this Court modified the standard FRCP 59 in formulating its own rules, making Rule 59 applicable not only to motions for new trials and to amend judgments but also to motions for rehearing and for reconsideration. See RCFC 59. Although FRCP 59 does not apply to motions for reconsideration of interlocutory orders that are not immediately appealable, see Iraheta v. United of Omaha Life Ins. Co., No. 2004-794, 2005 WL 701070, at *1 (D. Md. Mar. 28, 2005), this Court modified Rule 59 to include motions for reconsideration of interlocutory orders. See, e.g., Anchor Savings Bank FSB v. United States, 63 Fed. Cl. 6, 7 (2004) (reviewing motion for reconsideration of interlocutory order pursuant to RCFC 59).

occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice." Henderson County Drainage Dist. No. 3 v. United States, 55 Fed. Cl. 334, 337 (2003). "Because of a strong public policy disfavoring reconsideration based upon facts already in the record at the time of the original conclusion, a party's motion for reconsideration must be premised upon much more than a mere re-argument of positions already advanced before the court." Anchor Sav. Bank, FSB v. United States, 63 Fed. Cl. 6, 7 (2004) (citing Fru-Con Constr., 44 Fed. Cl. at 301); see Independence Park Apts. v. United States, 62 Fed. Cl. 684, 686 (2004) (party seeking reconsideration "must do more than merely reassert 'arguments which were previously made and were carefully considered by the court'") (quoting Henderson County, 55 Fed. Cl. at 337). "In other words, a motion for reconsideration is improper when based upon 'the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise a losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged with no more satisfactory results, as there would still be a losing party in the end.'" Roche v. District of Columbia, 18 Ct. Cl. 289, 290, 1800 WL 1263 (1883).

In this case, we are not aware of any new information in the plaintiff's motion for reconsideration that was not addressed in the parties' original filings to

Judge Sypolt. Further, it appears that the Court, in response to the parties' prior filings, thoroughly considered the parties' prior submissions and evaluated their arguments. Accordingly, although we disagree with Judge Sypolt's ultimate jurisdictional analysis, it does not appear that RCFC 59 is the appropriate mechanism through which to revisit Judge Sypolt's January 31, 2005 opinion.

## II. DESPITE THE RESTRICTIONS OF RCFC 59, THIS COURT POSSESSES INHERENT AUTHORITY TO REVISIT ITS OWN DECISIONS PRIOR TO FINAL JUDGMENT

Although the plaintiff, in its motion for reconsideration, has only requested that the Court grant relief pursuant to RCFC 59, the United States Court of Appeals for the Federal Circuit has recognized the inherent authority that this Court possesses to revisit its own decisions prior to entry of final judgment:

> The law of the case doctrine is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts. The doctrine requires a court to follow the decision on a question made previously during the case . . . . When a judgment of a trial court has been appealed, the decision of the appellate court determines the law of the case, and the trial court cannot depart from it on remand . . . . Orderly and efficient case administration suggests that questions once decided not be subject to continued argument, but the court has the power to reconsider its decisions until a judgment is entered.

Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed. Cir. 1991) (emphasis added) (quoting Jamesbury Corp. v. Litton Indus. Prod., Inc., 839 F.2d 1544 (Fed. Cir.), cert. denied, 488 U.S. 828 (1988)). Because the law of the case "merely requires a trial court to follow rulings of an appellate court," it "does *not* constrain the trial court with respect to issues not actually considered by an appellate court . . . ." Id. (emphasis in original). Accordingly, the trial judge "always has the power to change a ruling; further reflection may allow a better informed ruling in accordance with the conscience of the court." Jamesbury, 839 F.2d at 1551; see Chui v. United States, 948 F.2d 711, 717 (Fed. Cir. 1991).

III. A SUCCESSOR TRIAL COURT JUDGE STEPS INTO THE SHOES OF THE ORIGINAL TRIAL COURT JUDGE ASSIGNED TO A CASE AND HAS THE SAME POWER TO REVISIT ISSUES AS THE ORIGINAL TRIAL JUDGE

In the questions identified in its March 21, 2005 order, the Court requested that the parties address the "effect of the assignment of a new judge upon the standards for a motion to reconsider under the U.S. Court of Federal Claims Rule 59," including the extent to which the new judge may "revisit issues," the extent to which he must "disagree with the prior decision in order to grant a motion to reconsider," and whether the new judge may "decide the issue *de novo*."

Ordinarily, "a judge should hesitate to vacate, modify, or depart from the interlocutory order or ruling of another in the same case." Interlocutory Ruling or Order of One Judge as Binding on Another in Same Case, 132 A.L.R. 14, 15 (1941) (available on WESTLAW). The "usual inclination of a judge to adhere to the previous interlocutory rulings of other judges who have acted in the same case . . . is founded upon additional considerations of courtesy and comity." Id.; see United States v. O'Keefe, 128 F.3d 885, 891 (5th Cir. 1997) ("[u]nder the law of the case doctrine and general principles of comity, a successor judge has the same discretion to reconsider an order as would the first judge, but should not overrule the earlier judge's order or judgment merely because the later judge might have decided matters differently"); Thompson v. Moffitt, No. 102476, 1992 WL 884945, at *2 (Va. Cir. Ct. 1992) ("[i]mplicit in the purposes of the rule that successor judges should act with restraint when asked to reconsider a prior judge's rulings is the need to ensure the orderly conduct of an action and the orderly administration of justice by avoiding confusion, inconsistencies, and judge-shopping"). See generally Propriety of Federal District Judge's Overruling Or Reconsidering Decision Or Order Previously Made In Same Case By Another District Judge, 20 A.L.R. Fed 13 (1974) (discussing cases relating to issue).

Nevertheless, "[a] successor judge steps into the shoes of his or her predecessor, and is thus bound by the same rulings and given the same freedom, as the first judge." Exxon Corp., 931 F.2d at 878. "To the extent that a trial judge can alter a previous ruling, so too can a successor judge." Id.; see Chui, 948 F.2d at 717 (stating that, in Exxon, "successor judge assigned to take over a case after remand from [appellate court] was not required by law of the case, [Rule] 52, or any other authority, to give any particular deference to a predecessor judge's findings of ultimate fact which were not examined in, relied on, or otherwise necessary to the decision in a prior appeal"); Jamesbury, 839 F.2d at 1551 ("if the first judge can . . . change his ruling, a second judge should have and does have the power to do so as well").[3] Accordingly, despite the restrictions that RCFC 59 imposes upon motions for reconsideration that a party files, the Court itself has the discretion to revisit issues previously decided by a predecessor judge in a case.

---

3/ A somewhat different rule may apply with regard to review of findings of fact that the first judge had made based upon the first judge's credibility determinations. See Chui, 948 F.2d at 717-18; Exxon, 931 F.2d at 878. In this case, however, Judge Sypolt did not make any credibility determinations after a trial.

THE COURT'S QUESTION: Legal and policy based reasons the Court should consider in determining which course to follow

I. AS WE DISCUSSED AT THE PARTIES' MARCH 16, 2005 STATUS CONFERENCE, WE DISAGREE WITH JUDGE SYPOLT'S JURISDICTIONAL DECISION, BUT RECOGNIZE THE BENEFITS OF FINALITY THAT APPELLATE REVIEW WOULD PROVIDE

A. With All Due Respect, We Agree With The Plaintiff That The Trial Court's Jurisdictional Analysis In Its January 31, 2005 Order Is Incorrect

In its January 31, 2005 order, the Court found that, pursuant to section 119 of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10139, the United States Court of Appeals for the District of Columbia Circuit, rather than this Court, possesses original and exclusive jurisdiction to entertain plaintiff's contract claims. In response to the Court's October 14, 2004 show cause order, in which the Court had indicated its preliminary views regarding this Court's jurisdiction, we agreed with this Court and the United States Court of Appeals for the District of Columbia Circuit that the jurisdictional provisions of section 119 of the NWPA apply to actions or inactions by the Secretary of Energy arising under section 302 of the NWPA, the section of the NWPA that authorized the Secretary to enter into the Standard Contract and to collect fees for the disposal of spent nuclear fuel ("SNF"). See, e.g., Wisconsin Elec. Power Co. v. Department of Energy, 778 F.2d

1, 2-3 (D.C. Cir. 1985) (finding that section 119 of the NWPA provides the United States courts of appeals with original and exclusive jurisdiction to entertain challenges to action or inaction arising under section 302 of the NWPA); General Elec. Uranium Mgt. Corp. v. United States Dep't of Energy, 764 F.2d 896, 901-02 (D.C. Cir. 1985) (same). We also agreed with the Court that, because section 302(a)(5) of the NWPA mandates that the Secretary enter into contracts with the owners and generators of SNF and mandates that certain terms be included in those contracts, see 42 U.S.C. § 10222(a)(5), challenges to the terms of the contracts themselves (and challenges to the absence of specific terms that nuclear utilities might have wanted to include in the contracts) had to be presented to a United States circuit court of appeals within 180 days of the promulgation of those terms, as mandated by the statute of limitations contained within section 119. See 42 U.S.C. § 10139(c) (establishing statute of limitations for review of NWPA actions). Further, we agreed that current challenges to actual terms of the Standard Contract – and nuclear utility plaintiffs' attempts to add terms to the Standard Contract long after the contract's promulgation – are wholly untimely and inappropriate.

However, as we explained to the Court in response to its October 14, 2004 show cause order, we had no basis for departing from the Solicitor General's prior

analyses, presented in his opposition to a petition for certiorari in Consolidated Edison Co. of New York v. Department of Energy, No. 98-1358 (D.C. Cir. Apr. 16, 1999), cert. denied, 529 U.S. 1003 (Mar. 6, 2000), and in his petition for certiorari in Northern States Power Company v. United States, 128 F.3d 754 (D.C. Cir. 1997), cert. denied, 525 U.S. 1016 (Nov. 30, 1998).[4] Prior to submitting those pleadings, the Solicitor General had determined that challenges to the Secretary's failure to act in accordance with the express terms of the promulgated and executed contracts were not reviewable under the NWPA, but, instead, were properly presented to this Court under the Tucker Act.

Since that time, we have not identified any basis for altering our prior position regarding the jurisdiction of this Court, as opposed to the jurisdiction of the United States courts of appeals, to consider these matters. Although we do not agree with the plaintiff that the United States Court of Appeals for the Federal Circuit has already resolved this jurisdictional issue by implication in its decisions in Maine Yankee, Northern States, and Roedler – given that the appellate court was not presented with and did not consider the issue now presented – we agree with the plaintiff that this Court, rather than the United States courts of appeals,

[4] The relevant portions of these pleadings were attached to our response to the Court's show cause order.

possesses jurisdiction to entertain these contract claims. Accordingly, with all due respect, we agree with the plaintiff here that this Court's analysis of the jurisdictional issues in its January 31, 2005 order is in error.

B. Despite Our Agreement With The Plaintiff Regarding Jurisdiction, It Would Be Beneficial To Obtain Final Resolution Of This Jurisdictional Issue From The United States Court Of Appeals For The Federal Circuit

In response to the motions for reconsideration that the plaintiffs filed in all four of the cases in which Judge Sypolt's January 31, 2005 order was issued, two of the four judges now assigned to those four cases have granted the plaintiffs' motions and vacated Judge Sypolt's January 31, 2005 order: by order dated March 3, 2005, Judge Wiese, in Duke Power v. United States, No. 98-485C (Fed. Cl.), vacated that January 31, 2005 order, and, by order dated March 30, 2005, Judge Allegra, in Nebraska Public Power District v. United States, No. 01-116C (Fed. Cl.), vacated that order. The plaintiff's motion for reconsideration in PSEG Nuclear, Inc. v. United States, No. 01-551C (Fed. Cl.), remains pending before Judge Futey.

Although we agree that this Court possesses jurisdiction to consider the plaintiff's contract claims here, we nevertheless recognize the benefits that final resolution by the Federal Circuit of the jurisdictional issues raised by the Court's

January 31, 2005 order would provide not only in this case, but in all of the spent nuclear fuel cases pending before this Court. Although, given our agreement with the plaintiff that this Court possesses jurisdiction to entertain this case, we have no substantive basis (other than the limitations of RCFC 59, upon which the plaintiff based its motion) for opposing plaintiff's request that the Court vacate its January 31, 2005 order, we also would not oppose a decision by the Court to allow for appellate review of that decision to eliminate the possibility that, after significant additional resources have been expended in these cases, the appellate court might later raise this jurisdictional issue in a manner contrary to the positions that the parties are now presenting. At the present time, and as we discussed at the parties' March 16, 2005 status conference (see Transcript, at 13-15), there are already numerous issues pending before this Court in various SNF cases that would benefit from the finality and uniformity in resolution that review by the Federal Circuit would provide. Although we respectfully disagree with the ultimate jurisdictional finding in this Court's January 31, 2005 order, we believe that, because the jurisdictional issues raised by the Court's January 31, 2005 order are present in every SNF case pending before this Court, the type of finality that

review by the Federal Circuit would provide regarding those issues would be helpful to the Court and to all of the SNF parties.[5]

## II. EVEN THOUGH WE AGREE THAT THIS COURT POSSESSES JURISDICTION TO ENTERTAIN PLAINTIFF'S CONTRACT CLAIMS, THE RATIONALE THAT OTHER JUDGES OF THIS COURT HAVE USED TO FIND JURISDICTION IS INCORRECT

Appellate review of the jurisdictional issues surrounding the SNF cases could also potentially resolve any issues relating to the scope of this Court's jurisdiction as compared with the original and exclusive jurisdiction of the United States courts of appeals. Based upon our understanding of the Court's jurisdiction, and as we explained in our response to the Court's show cause order, we believe that this Court properly possesses jurisdiction to revisit an issue that the plaintiffs believe was conclusively resolved in Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997). As we explained in our show cause order response, the Government consistently has taken the position that the Court of Federal Claims has the exclusive jurisdiction to resolve issues concerning the construction and administration of the Standard Contract. As we established in

---

5/ As the plaintiff has informed the Court, the Federal Circuit recently suspended consideration of the pending petition for permission to appeal Judge Sypolt's interlocutory order until the pending motions for reconsideration are resolved. That suspension does not affect or eliminate the value that appellate court consideration of this issue would provide.

that response, the United States courts of appeals do not possess jurisdiction under section 119 of the NWPA to review performance-related matters arising under the Standard Contract. Yet, in Northern States, the United States Court of Appeals for the District of Columbia Circuit expressly asserted jurisdiction to interpret and rule upon the "unavoidable delays" clause contained in the Standard Contract and to determine whether the delay at issue in these cases is encompassed within that contract provision. The D.C. Circuit then purported to bar the Department of Energy from asserting any interpretation of the "unavoidable delays" clause that would excuse its delay based upon that contract clause. Because the D.C. Circuit lacked jurisdiction to resolve that issue, the Government should not be barred from revisiting that issue in this Court. See Christopher Village, L.P. v. United States, 360 F.3d 1319, 1329-30 (Fed. Cir. 2004), cert. denied, No. 04-517, 2005 WL 405783 (U.S. Feb. 22, 2005). It is for this very reason that this Court can, and should, notwithstanding the United States Court of Appeals for the District of Columbia Circuit's decision in Northern States Power, resolve the issue of whether DOE may properly invoke the "unavoidable delay" provision of the Standard Contract. A decision by the Federal Circuit regarding the basis, scope, and extent of this Court's jurisdiction to entertain claims arising out of contracts entered pursuant to the NWPA presumably will govern whether the Northern States

decision – in which the D.C. Circuit overstepped its jurisdiction – is effective in this Court.

Recently, another judge of the Court of Federal Claims issued a decision criticizing the January 31, 2005 decision of this Court and, further, implicitly provided another basis for this Court's ability to question the D.C. Circuit's decision in Northern States. In Boston Edison Co. v. United States, No. 99-447C, 2005 WL 375603 (Fed. Cl. Feb. 15, 2005), Judge Lettow "disagree[d] with both the rationale and result in *Florida Power* and conclude[d] that [the court] has jurisdiction" to entertain claims arising from contracts entered pursuant to the NWPA. Id. at *5. As part of his analysis, he found that "[j]urisdiction over actions taken under Title III [of the NWPA]," including those under section 302 of the NWPA, "is not affected at all by Section 119." Id. at *9-*10. Judge Wiese and Judge Allegra, in granting the plaintiff's motions for reconsideration in Duke Power and Nebraska Public Power, expressly adopted Judge Lettow's reasoning in Boston Edison. These decisions are directly contrary to the prior opinions of the D.C. Circuit, which has expressly held that the jurisdictional provisions of section 119 vesting original and exclusive jurisdiction in the United States courts of appeals affirmatively encompass activities under Title III of the NWPA, including section 302. See Wisconsin Elec., 778 F.2d at 2-3; General Elec. Uranium, 764

F.2d at 901-02.[6] Jurisdiction for the D.C. Circuit's decisions in Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996), and Northern States, as well as the United States Court of Appeals for the Eleventh Circuit's decision in Alabama Power Co. v. United States Department of Energy, 307 F.3d 1300 (11th Cir. 2002) – decisions upon which the plaintiffs are relying as binding precedent in the various spent nuclear fuel cases – was premised upon section 119's grant of original and exclusive jurisdiction to the United States courts of appeals to review issues arising out of Title III of the NWPA. Although, in its motion for reconsideration, the plaintiff asserts that the D.C. Circuit's decisions in Indiana Michigan and Northern States are res judicata in this case, Pl. Mtn. at 12, the D.C. Circuit would have lacked jurisdiction to entertain any of the issues in those cases under the Court's rationale in Boston Edison. Under that rationale, and for the reasons established in our response to the Court's prior show cause order, this Court would be entitled to revisit the issues decided in those cases.

---

6/ For a fuller explanation of the grounds that the D.C. Circuit considered in finding that the NWPA's jurisdictional provision encompasses review of actions and inaction under Title III of the NWPA, we have attached to this response those pages from the Government's brief to the D.C. Circuit in which the NWPA jurisdictional provision is discussed. Similarly, the United States District Court for the District of Columbia also explained the rationale for finding that section 119 of the NWPA applies to Title III of the NWPA in Wisconsin Elec. Power Co. v. Hodel, 626 F. Supp. 424, 426-27 (D.D.C. 1984), aff'd, 778 F.2d 1 (D.C. Cir. 1985).

Christopher Village, 360 F.3d at 1329-30.[7] The confusion resulting from the conflicting jurisdictional decisions from the D.C. Circuit in General Electric, Indiana Michigan, and other cases and from this Court in Boston Edison, Duke Power, and Nebraska Public Power further support the need for the Federal Circuit to clarify the basis and scope of this Court's jurisdiction. In any event, the bases upon which the Court in Duke Power and Nebraska Public Power granted the plaintiff's motion for reconsideration – finding that the jurisdictional review provisions of section 119 of the NWPA do not apply to any actions under Title III of the NWPA – are incorrect and should not form the basis upon which this Court vacates the Court's January 31, 2005 decision regarding jurisdiction. As previously established, to the extent that the Court grants that motion for reconsideration, it should be solely because, although section 119 of the NWPA applies to actions under Title III, actions taken during contract performance and unrelated to the development of the terms of the contracts themselves are outside the scope of section 302(a)(5) of Title III, 42 U.S.C. § 10222(a)(5).

---

7/ We disagree with the Court's finding in Boston Edison that section 119 does not apply to any decisions arising under Title III. However, assuming that the Court here adopts that finding, it would provide another basis for this Court's review of the matters addressed in the D.C. Circuit's decision in Northern States.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

April 8, 2005

Attorneys for Defendant