# APPENDIX

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 84-5234 and 83-2073

GENERAL ELECTRIC URANIUM MANAGEMENT CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF ENERGY, et al.,

Defendants-Appellees.

ON PETITION FOR REVIEW OF AN ORDER
OF THE DEPARTMENT OF ENERGY

---or---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF FOR THE DEPARTMENT OF ENERGY, et al.

QUESTIONS PRESENTED

1. Whether the district court erred in assuming original subject matter jurisdiction over this suit to review a final decision of the Secretary of Energy issued pursuant to Section 302 of the Nuclear Waste Policy Act of 1982, 42 U.S.C. 10222.

2. Whether the Department of Energy's regulation for the "one-time" fee applicable to the disposal of nuclear fuel spent prior to April 7, 1983, which provides for a tiered system that relates the fee to the level of "burnup" of spent fuel, violates the requirement of Section 302(a)(3) of the Nuclear Waste Policy Act, 42 U.S.C. 10222(a)(3), that the "one-time" fee "shall be equivalent to an average charge of 1.0 mil per kilowatt-hour."

* * * * *

These cases have not previously been before the Court.

GEUMCO focuses on a different segment from the Senate Hearings. GEUMCO points out that the Office of Technical Assessment (OTA) disagreed with DOE's criticism of the one mill per kilowatt-hour formula. From OTA's statement, GEUMCO deduces that the retention of that formula in the ongoing fee indicates a rejection of DOE's legal position here. This interpretation is erroneous. First, OTA, like DOE, was not directing comments to the one-time fee. Second, the OTA was disagreeing with proposals DOE had made in the past for a flat dollars-per-kilogram fee on heavy metal. OTA was not addressing DOE's "final reconciliation" proposal for the ongoing fee. In sum, GEUMCO relies upon a debate on a different issue with respect to a different fee.

DOE's interpretation is supported by considerations of fair apportionment of the costs among those whose waste must become a federal responsibility. It is supported by logic: as drafted, §§302(a)(2) and (3) are simply too elaborate to support GEUMCO's position. If Congress wanted an all fees to "equate to one mill per kilowatt hour for all fuel assemblies" it would have said so. DOE's decision conforms to the literal requirements of the Act and is supported by the legislative history.

An agency decision with these attributes cannot be set aside by the courts.

## ARGUMENT

### I. ORIGINAL JURISDICTION OVER APPELLANT'S CHALLENGE TO THE ONE-TIME FEE LIES EXCLUSIVELY IN THE COURTS OF APPEALS

Section 119 of the Nuclear Waste Policy Act, 42 U.S.C. 10139(a)(1)(A) provides:

(1) Except for review in the Supreme Court of the United States, the United States courts of appeals shall have original and exclusive jurisdiction over any civil action--

(A) for review of any final decision or action of the Secretary, the President, or Commission under this subtitle;

. . .

Section 111(b) states that "The purposes of this subtitle are---

(4) to establish a Nuclear Waste Fund, composed of payments made by the generators and owners of such waste and spent fuel, that will ensure that the costs of carrying out activities relating to the disposal of such waste and spent fuel will be borne by the persons responsible for generating such waste and spent fuel.

Section 302(a)(3) of the Act, which prescribes the guidelines for one-time fee, is not within the "part A" or "subtitle A" wherein Section 119, "judicial review," is located.[6] On this limited basis, the district Court disagreed with our contention that the courts of appeals had exclusive jurisdiction to review the Secretary's rules for the Waste Fund fees. (J.A. 305-307).

We submit that the district court erred in holding that the language of §119 was so clear as to foreclose further inquiry. "[H]owever clear the words may appear on 'superficial

---

[6] The text of §119, as it appears in P.L. 97-425, uses the term "subtitle;" as codified at 42 U.S.C. 10139, the term "part" is employed.

examination,'" Train v. Colorado Public Interest Research Group, 426 U.S. 1, 10 (1976), it is proper to consider external aids of construction if necessary to avoid absurd results or a result which is "merely at variance" with the policy of the legislation as a whole. United States v. American Trucking Assn's., 310 U.S. 534, 544 (1940).

We argued in the court below that the exclusive original appellate jurisdiction provision of §119 should be read to include fee decisions under §302 because the establishment of the Fund is expressly included in the "Purposes" provision of subtitle A of the Act. The only other district court to rule on this issue ruled in favor of the Government on essentially this basis. Wisconsin Electric Power Company v. Donald P. Hodel, D.C. No. 83-2281, July 18, 1984 (slip op. attached, at 5-6).

> Despite the statute's lack of clarity, defendant's argument is plausible. Section 10222, creating the Nuclear Waste Fund, and providing for the contracts (subsection (a)(1)) and fees (subsection (a)(2)) at issue here is physically included in Subchapter III of Chapter 108 rather than Part A of Subchapter I. However, the very first words of Section 10222(a)(1) are:
>
>> In the performance of his functions under this chapter, the Secretary is authorized. . ., etc. [Emphasis by the district court.]
>
> This reference to "chapter" should be enough, without more, to meld sections [10139(1)(A)] relating to exclusive jurisdiction and section 10222(a)(1), unless doing so would do serious violence to the scheme of the Act.
> * * *

The Wisconsin Electric court found that the Act could be construed to provide original appellate jurisdiction to review

the fees without offending the statutory scheme. At the same time, such a construction would be strongly supported by considerations of judicial economy.

We respectfully submit that the views expressed by the Wisconsin Electric court are persuasive and, even though the Government obtained a favorable decision on the merits from the district court in this case, we ask the Court to affirm in No. 84-5234 on the ground that the district court lacked jurisdiction so set aside the Secretary's one-time fee.

A. Bifurcated Review Of The Decisions Made By The Government Would Be Contrary To Sound Principles Of Judicial Administration

Under the restrictive reading of §119, original jurisidiction lies in the courts of appeals for the decisions of site selection, research and development, and environmental assessment. But, in bewildering distinction, the fee schedules for the Nuclear Waste Fund would be excluded. Such rate decisions, which are reviewable only on the administrative record, under the Administrative Procedure Act, are archtypical examples of the types of cases where the agency is acting in the factfinding role comparable to that performed by a district court. Such matters are typically reviewed directly in the courts of appeals. To split these fee decisions off from the general judicial review scheme set forth in §119 goes against the presumption against such bifurcation. Oljato Chapter of Navajo Tribe v. Train, 515 F.2d 654, 660 (D.C. Cir. 1975); Investment Company Trust v. Bd. of Gov. of the Federal Reserve System, 551 F.2d 1270, 1276 (D.C. Cir. 1977). As the Wisconsin Electric court observed (supra, slip op. at 6),

> all the reasons why any rulemaking by a department or agency should be reviewed directly by a Court of Appeals apply with full force here. The rulemaking record and original fact findings were made by and for the Secretary. There is little or no fact collecting or fact finding role for a trial court. The Secretary's interpretation of the statute (unlike a trial court's) is cushioned by expertise and, in this case, by his (or his staff's) live experience with the proposal, hearing, markup, and enactment of the Act. The Court of Appeals must inevitably review this Court's interpretation of the Act, essentially de novo. A trial court's interpretation would be, at best, modest assistance to the Court of Appeals. * * * [Citation omitted.]

The Wisconsin Electric decision recognizes that the ambiguous language of the Nuclear Waste Policy Act leaves "the issue not free from doubt" (id.), but the balance tipped in favor of original jurisdiction in the courts of appeals because of these sound considerations of judicial efficiency. Standing alone, this is more than sufficient basis to construe §119 as conferring original jurisdiction in this Court to assume original juridiction over the instant case; ". . . where it is unclear whether judicial review jurisdiction is in the district court of the court of appeals, the ambiguity is resolved in favor of the latter." Denberg v. Railroad Retirement Board, 696 F.2d 1193, 1197 (7th Cir. 1983), cert. denied, 104 S. Ct. 1706 (1984).

> Both Congress and the Federal Judiciary have recognized the Court of Appeals as the preferred forum for review of administrative action . . . . Accordingly, ambiguous special review statutes should be construed to allow Courts of Appeals to review all agency actions they are institutionally competent to hear.

Note, The Forum for Judicial Review of Administrative Action: Interpreting Special Review Statutes," 63 B.U.L. Rev. 765, 800 (1983). See, 4 K. Davis, Administrative Law Treatise §23.5, at 130 (1983).

B. The Legislative History Of The Nuclear Waste Policy Act Shows That Congress Intends The Courts of Appeals To Exercise Exclusive Original Jurisidiction Over The Secretary's Rules Establishing Fees

The legislative history of the Nuclear Waste Policy Act shows a consistent and almost unprecedented concern for the timely implementation of its provisions (such as the funding provisions under consideration here), the absence of which had held up the waste disposal program for over 30 years. 42 U.S.C. §10131(a)(3).[7] For instance, the Act places such a high premium on timeliness that Federal agencies are required to submit a written report to the Secretary of DOE and to Congress explaining any failure to meet a project schedule deadline under the Act. 42 U.S.C. §10134(e). In addition, Federal authorities are directed to issue any authorizations needed for the repository program "at the earliest practicable date." 42 U.S.C. §10140(a). Indeed, the Act set a specific 180-day deadline for commencement of judicial review, 42 U.S.C. §10139(b), and other specific dates for site selection, 42 U.S.C. §10134, completion of a mission plan scheduling major

---

7 See Pacific Gas and Electric Co. v. State Energy Resources Conservation & Development Comm'n, 103 S. Ct. 1713 (1983).

milestones, 42 U.S.C. §10221, and the initial acceptance of nuclear waste, 42 U.S.C.. §10222. It even required that the rulemaking for establishment of the waste disposal fee under consideration here must be completed "not later than 180 days after enactment" of the NWPA. 42 U.S.C. §10222(a)(4). Further, Congress exempted many of DOE's actions from the requirements for preparation of an environmental impact statement under Section 102 of the National Environmental Policy Act, 42 U.S. §4332. See 42 U.S.C. §10132(e).

Congress was clearly looking for ways to avoid delay in the repository program. It thus determined it was appropriate to remove one layer of judicial review of critical areas of the program and to promote a policy of timely and uniform national interpretation and application of the Act.[8] To do so, it required judicial review of the crucial areas of the repository program in the courts of appeals in the first instance.

Against this historical backdrop, we turn to analyze the legislative history of the judicial review provisions of the Act, all of which originated in the House of Representatives. The present provision for judicial review in the Court of Appeals, which is contained in what is now Section 119 of the Act, had its genesis in what was originally Section 118 of H.R.

---

8 See Harrison v. PPG Industries, Inc., 446 U.S. 578, 593 (1980); accord, NRDC v. EPA, 673 F.2d 400, 405, n. 15 (D.C. Cir. 1982); see also Currie and Goodman, "Judicial Review of Federal Administration Action: Quest for the Optimum Forum" 75 Colum. L. Rev. 1, 16 (1975).

3809, 97th Cong., 1st Sess. (June 4, 1981). That section provided for "original and exclusive jurisdiction" in the United States Court of Appeals for the District of Columbia Circuit for expedited review of "any civil action for review of any final decision or action of the Secretary . . . under this subtitle [A]," including the fee collection, appropriation and contract authority set forth in what was then Sections 122 and 123 of Subtitle A of the bill. The requirement that DOE propose user fees was contained in the same subtitle (Part A) as the judicial review provision. Id. at §123(b). Later, the House Committee on Interior and Insular Affairs amended H.R. 3809 to provide for a "Nuclear Waste Trust Fund" in what was then Section 124 of the bill and moved the review provisions to a new Section 119, all still within Part A. H.R. Rep. No. 491, 97-Part 1, 97th Cong., 2d Sess. at 15-16 (Apr. 27, 1982). These new Nuclear Waste Trust Fund provisions remained reviewable by the Court of Appeals under the provisions of the new Section 119, as did the Nuclear Waste Fund provisions of a second similar nuclear waste bill, H.R. 6598, a measure which also provided for expanded venue in any circuit. H.R. 6598, 97th Cong., 2d Sess. (June 15, 1982); H.R. Rep. No. 785, Part I, 97th Cong., 2d Sess. at 16-17 (Aug. 20, 1982). A third bill, H.R. 5016, also required "original and exclusive" expedited review in the United States Court of Appeals for the District of Columbia Circuit of any civil action questioning any final decision or agency action. H.R. 5016, 97th Cong., 2d Sess. (Nov. 18, 1981). <u>Thus all three predecessor House bills required review of nuclear waste funding</u>

in the courts of appeals. In contrast, the Senate version of the Act, S.1662, 97th Cong., 1st Sess. (Sept. 9, 1981) and S. Rep. No. 282, 97th Cong., 1st Sess. (Nov. 30, 1981) and No. 327, 97th Cong., 2d Sess. (Mar. 25, 1982) contained no judicial review provisions whatsoever.

The House later moved the Nuclear Waste Fund provisions to Title III of the Act and kept the review provisions in Section 119. See H.R. 7187, 97th Cong., 2d Sess. (Sept. 24, 1982). Thus, in H.R. 7187 and later in the compromise bill, H.R. 3809, the Nuclear Waste Fund provisions were separated from the subtitle contained the judicial review provisions. Section 111(b) of Part A, however, retained the language that "a purpose" of that part was to "establish a Nuclear Waste Fund . . . ." 42 U.S.C. §10131(b). It was these Nuclear Waste Fund provisions of Section 111(b) and the judicial review provisions of §119 which were ultimately enacted into law virtually verbatim. 42 U.S.C. §10139 (the House bill H.R. 3809 was passed in lieu of the Senate bill), see 128 Cong. Rec. S15621 (Dec. 20, 1982).[9]

The history of the bill contains no indication that the final reorganization was intended to reflect any fundamental

---

9 While the one-time provision of Section 302(a)(3) was obtained from Section 603 of S. 1662, the basic structure for establishment and operation of the Waste Fund provisions of Section 302 of the NWPA came from the House version of the Waste Act. S. Rep. No. 282, 97th Cong., 1st Sess. at 26 (Mar. 30, 1981); 128 Cong. Rec. S4157 (Apr. 28, 1982). 128 Cong. Rec. S15654 (Dec. 20, 1982).

change in the judicial review provisions contained in the original legislative proposals. Indeed, in the explanation of the consolidated bill, there is a total absence of any expression by any member of the House that the consolidated bill modified the judicial review provisions contained in the original bills approved by the Committees. 128 Cong. Rec. H8161-99 (Sept. 30, 1982); 128 Cong. Rec. H8580-98 (Nov. 30, 1982); 128 Cong. Rec. H8777-8800 (Dec. 2, 1982). Surely such a major change in an important aspect of the legislation would not have gone without mention, if indeed, such a change was intended.[10] Thus, the only logical conclusion to be drawn is that Congress intended to require judicial review of Nuclear Waste Fund matters in the courts of appeals, especially since Congress retained the "purpose" wording of Section 111 within the same "part" as the Section 119 review provision.

The author of the Note, Jurisdiction to Review Administrative Action: District Court or Court of Appeals, 88 Harv. L. Rev. 980, 984-85 (1975), anticipated this case when he wrote,

> . . . [I]n many cases there appears to be no purpose served by the limited language of a special review statute and the language appears most likely to have resulted only from legislative oversight. In such cases, the basic purposes underlying the enactment

---

[10] In contrast, the House deleted the provision requiring expedited judicial review only after debate and separate vote. 128 Cong. Rec. H8781-83 (Dec. 2, 1982). However, it was clear from the decision and debate that this deletion in no way indicated a lessening of the Congressional desire for speedy resolution of NWPA issues.

of special review statutes may argue for a broad reading of the scope of the statutory procedure.

C. If §119 Cannot Be Construed To Provide For Direct Review Of The Fee Rules In The Courts Of Appeals, These Rules Should Not be Subject To Judicial Review By Any Court

From our discussion of the legislative history of the Nuclear Waste Policy Act, it should be clear that the Government believes that Congress intended for the fee rules promulgated to provide monies for the Nuclear Waste Fund to be subjected to judicial review, but only in the courts of appeals under §119(a), under the expedited deadline for filing in §119(b). If the Court concludes that §119, read in pari materia with the other provisions of the Nuclear Waste Policy Act, does not permit conferral of direct judicial review jurisdiction in the courts of appeals, then it is clear that the Nuclear Waste Policy Act makes no provision for judicial review of the fees issued pursuant to §302. We respectfully submit that it does not automatically follow, from this omission, that the district courts should review DOE decisions implementing the Nuclear Waste Fund Fee provisions under §302.

There are solid reasons to conclude that the fees were intended by Congress not to be subject to judicial review. One of these has been discussed above: direct district court review of the fees is duplicative and time-consuming whereas Congress desired expeditious establishment of the Program. We add this consideration: the fees have a self-correcting mechanism which mitigates the need for judicial review.

Under §302(a)(4),

> The Secretary shall annually review the amount of the fees established by paragraphs (2) and (3) above to evaluate whether collection of the fee will provide sufficient revenues to offset the costs as defined in subsection (d) herein. In the event the Secretary determines that either sufficient or insufficient revenues are being collected, in order to recover the costs incurred by the Federal Government that are specified in subsection (d), the Secretary shall propose an adjustment to the fee to insure full cost recovery. * * *

We should add that the fees being assessed upon the generators or holders of nuclear waste are very different from the rate decisions typically reviewed by the courts. DOE is not a private utility trying to maximize its profits; the government is not raising capital in competitive money markets, nor is it seeking a "just and reasonable" rate of return. These fees are more like earmarked taxes, or "user fees," than utility rates. Since DOE must reassess the propriety of the ongoing fee each year, and is directed to make mid-course adjustments in a shorter period of time than could be accomplished by judicial review, Congress has mitigated the need for judicial review of the fees.

If Congress' failure to expressly include the fee decisions in the judicial review provision, §119, is advertent, it is most likely that these items are excluded from review altogether. Compare, Block v. Community Nutrition Institute, 104 S. Ct. 2450 (1984); Thompson v. Clark, __ F.2d ___ (D.C. Cir. No. 82-1528, Aug. 7, 1983), slip op. at 6; Banzhaf v. Smith, __ F.2d ___ (D.C. Cir. No. 84-5304, June 25, 1984). If our construction of the Act -- that the courts of appeals should review DOE's fee

rules directly -- is incorrect, the alternative, no review at all, is more compatible with this legislative scheme than the assumption of judicial review by the district courts.

## II. THE DEPARTMENT OF ENERGY'S INTERPRETATION THAT SECTION 302(a)(3) OF THE NUCLEAR WASTE POLICY ACT DOES NOT REQUIRE THE AGENCY TO BASE ITS ONE-TIME FEE ENTIRELY ON ELECTRICITY GENERATED AS ADVOCATED BY GEUMCO IS REASONABLE AND THERE IS NO BASIS FOR THIS COURT TO SET THAT INTERPRETATION ASIDE.

As a general principle of administrative law, an agency's interpretation of the statute it has been directed to administer is entitled "great deference," Udall v. Tallman, 380 U.S. 1, 16 (1965), and will be set aside by the courts only if "there are compelling reasons it is wrong," Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381 (1969). To uphold DOE's interpretation here does not mean this Court, had it been charged by Congress to craft the fee structure under the Nuclear Waste Policy Act, would have reached the same result. "We need not find that [DOE's] construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." Unemployment Compensation Commission v. Aragon, 329 U.S. 143, 153 (1946). "We need only conclude that it is a reasonable interpretation of the relevant provisions." American Paper Institute v. American Electric Power Service Corp., 103 S. Ct. 1921 (1983). See, also, Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 104 S. Ct. 2778 (1984).

Moreover, there are special circumstances present here which have frequently been observed as adding to the already heavy weight normally afforded to the agency's views. This is a

CERTIFICATE OF FILING

I hereby certify that on this 8th day of April 2005, a copy of foregoing "DEFENDANT'S RESPONSE TO THE COURT'S ORDER DATED MARCH 21, 2005" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.