No. 98-483 C
Judge Baskir

(Filed Electronically, September 8, 2008)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FLORIDA POWER AND LIGHT CO,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

# TEXAS GENCO, LP, *ET AL*.'S RESPONSE TO GOVERNMENT'S MOTION TO COORDINATE DISCOVERY AND DEVELOP A LITIGATION PLAN FOR SPENT FUEL CASES

JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
(202) 331-3173 phone
(202) 261-4751 fax
*Counsel for Plaintiffs*
Texas Genco, LP, *et al.*

Of Counsel:
ROBERT L. SHAPIRO
Greenberg Traurig, LLP

TABLE OF CONTENTS

1. The Government Fails to Identify Common Issues Warranting Special Procedures . 2

2. Discovery In the Spent Fuel Cases Has Not Been Unduly Burdensome.................... 4

3. Coordinated Discovery is More Likely to Hurt than Help Efficiency........................ 6

4. Government Request for Expedited Disclosures by Plaintiffs is Without Merit...... 10

5. The Government's Motion is Procedurally Deficient.............................................. 11

6. The Government Should Adopt a New Settlement Posture to Resolve these Cases 12

# TABLE OF AUTHORITIES

Cases

*California Federal Bank v. United States*, 39 Fed. Cl. 753 (1997) .................................. 7

*Dairyland Power Coop. v. United States*, 77 Fed. Cl. 330 (2007) ................................ 3, 8

*Dairyland Power Coop. v. United States*, 79 Fed. Cl 659 (2007) .................................... 5

*Dairyland Power Coop. v. United States*, 79 Fed. Cl. 722 (2007) ................................... 5

*Dairyland Power Coop. v. United States*, 79 Fed. Cl. 709 (2007) ................................... 5

*Pacific Gas and Elec. Co. v. United States*, 2008 WL 3089272.................................... 2, 4

*Pacific Gas and Elec. Co. v. United States*, 70 Fed. Cl. 128 (2006) ................................ 5

*Pacific Gas and Elec. Co. v. United States*, 71 Fed. Cl. 205 (2006) ................................ 5

*Yankee Atomic Elec. Co. v. United States*, 2008 WL 3089032 ........................................ 3

Statutes

42 U.S.C. § 10151-57 ................................................................................................ 4

42 U.S.C. § 10156(a) ................................................................................................ 4

Rules

RCFC 26(a)........................................................................................................ 2, 10

RCFC 26(a)(1) ................................................................................................... 10

RCFC 26(b)(2)(C).................................................................................................. 8

RCFC 40.1 ........................................................................................................ 11

RCFC 40.2 ........................................................................................................ 11

RCFC 40.2(b)........................................................................................................ 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Electronically filed on September 8, 2008

| | | |
|---|---|---|
| FLORIDA POWER AND LIGHT CO, | ) | |
| Plaintiff, | ) | No. 98-483 C |
| v. | ) | (Judge Baskir) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

TEXAS GENCO, LP, *ET AL.*'S RESPONSE
TO GOVERNMENT'S MOTION TO COORDINATE
DISCOVERY AND DEVELOP A LITIGATION PLAN FOR SPENT FUEL CASES[1]

The government's motion to coordinate discovery and develop a litigation plan for spent fuel cases is problematic in multiple respects, and should be denied. Most importantly, coordinated procedures are only appropriate where significant common issues need to be resolved. Yet here the Federal Circuit has already resolved the overriding common issue in these cases – namely, the contractual rate of acceptance. What remains to be litigated is the particular damages suffered by each individual plaintiff based on the common acceptance rate that has now been determined by the appellate court. Such individualized damages determinations cannot plausibly be facilitated by lumping all cases together in a common proceeding.

Not surprisingly in view of the Federal Circuit's action, the government's motion fails to set out common issues that it claims warrant the special procedures it proposes.

[1] Because the government motion used the *Florida Power and Light Co. v. United States* caption, Plaintiffs are likewise using that caption for its response, and filing this response in that case as well, in an effort to avoid needless confusion.

In addition, the government's motion fails to delineate with any specificity the special procedures it would like imposed, it fails to recognize that discovery in the spent fuel cases to date has not been excessive in light of the large stakes, broad time frames and issues in dispute, it improperly seeks to advance the time for plaintiffs' RCFC 26(a) disclosures in many cases, and is procedurally deficient.

Ultimately, the special procedures the government suggests are far more likely at this stage of the litigation to impose extra burdens on the parties than they are to make proceedings more efficient. Indeed, if the government truly were interested in expediting resolution of these cases, the government would hasten its development of a revised settlement plan rather than worrying about procedures for additional litigation. Now that the rate of acceptance issue has been resolved, settlements should be achievable in many if not most cases. For all of these reasons, the government's motion should be denied.

1. <u>The Government Fails to Identify Common Issues Warranting Special Procedures</u>

It only makes sense for the Court to consider the imposition of special procedures in the spent fuel cases if there are significant common issues in the cases to be addressed through such procedures. Indeed, the primary Rule of the Court the government has invoked, RCFC 40.2(b), only applies where cases "present common issues of fact." The government fails to identify such issues, and that failure should be fatal to its motion.

Indeed, the Federal Circuit's recent decisions resolve a number of common issues in these cases. As noted above, the Federal Circuit has resolved the all-important common issue of the contractual rate of acceptance to be used in the determination of damages arising from the government's breaches of the utilities' contacts. *Pacific Gas and Elec. Co. v. United States,* 2008 WL 3089272 at *7. The Federal Circuit has also determined that the parties' contracts cover Greater-Than-Class C ("GTCC") waste. *See*

*Yankee Atomic Elec. Co. v. United States*, 2008 WL 3089032 at *9. With resolution of these common issues and the others addressed by the Federal Circuit, the appropriate course is for this Court to proceed to resolve the remaining damages issues by applying the Federal Circuit's rulings to the case-specific damages facts that are presented in each particular case.

In fact, as this Court has recognized when addressing previous government requests for consolidation of the spent fuel cases, even before the recent Federal Circuit decisions, "the course of the SNF litigation before the various judges of the Court of Federal Claims has moved significantly beyond such an approach." *Dairyland Power Coop. v. United States*, 77 Fed. Cl. 330, 336 (2007). The government's motion acknowledges that this Court has already tried or resolved 28 of the spent fuel cases – approximately half the total number of cases pending. *See* Govt. Mot. at 7. At this advanced stage of the litigation, and given that the remaining damages issues are largely case-specific, it makes no sense to bundle the other half of these spent fuel cases together to address purportedly "common" issues that the government has not even bothered to identify and that cannot possibly help in the already-decided cases.

The government mentions a handful of issues that it argues have occupied discovery in the spent fuel cases thus far. *See* Govt. Mot. at 6-7. But the government's list primarily references the rate of acceptance and GTCC waste issues that have already been resolved. The government also references issues that are legal rather than factual (*e.g.* prejudgment interest recovery, enforceability of assignments of claims and contracts, effect of non-payment of one-time fee). Some of those issues (*e.g.*, the one-time fee issue) were resolved in the recent Federal Circuit decisions, and the others have arisen only in some, not all spent fuel cases. The government also mentions the interplay

between the oldest-fuel first and exchanges provisions in the contracts. But as the Federal Circuit noted, different Judges of the Court have reached differing decisions on the admissibility of expert testimony on the exchanges issue, *Pacific Gas and Elec. Co.,* 2008 WL 3089272 at *10, and this issue will likely continue to require individualized determination by the Judges of this Court. Moreover, the exchanges issue has only been raised in a handful of the cases thus far, and the government fails to offer any reason to expect it to either be addressed in a significant portion of the remaining cases or require any significant additional discovery. The remaining issue referenced by the government, "the ramifications of potential interim storage of SNF," is unclear. The Nuclear Waste Policy Act provided for an interim storage program, 42 U.S.C. § 10151-57. But the authority for that program expired in 1990, 42 U.S.C. § 10156(a), and that program has not been a significant issue in any of the spent fuel cases to date. If the government is referring more generally to its efforts to provide for interim storage of spent fuel, those efforts have been addressed in the context of the rate of acceptance issue that has already been resolved. If the government is referring to utilities' provision of interim storage of their spent fuel in light of the government's breach, those are individualized efforts that present case-specific rather than common issues of fact. Thus, the government has not listed any significant issues of fact that it expects to be common among the remaining spent fuel cases.

2. <u>Discovery In the Spent Fuel Cases Has Not Been Unduly Burdensome</u>

The government's gripes that it has been burdened by duplicative discovery requests in the spent fuel cases thus far, Govt. Mot. at 13-16, are both irrelevant and without merit. The government's gripes are irrelevant because the issue presented by the government's motion is how best to move forward with the remaining cases. Absent

common issues to be resolved going forward, there can be no purpose for coordinated discovery regardless of any merit to the government's arguments about the burden of prior discovery. The government's gripes are also without merit, however, because the various Judges of this Court have obviously already determined that the discovery that spent fuel plaintiffs have sought and obtained to date was appropriate. Repeatedly, the government has opposed discovery from spent fuel plaintiffs, claiming "burden" among other things, and this Court has rejected the government's protests. *See, e.g., Dairyland Power Coop. v. United States,* 79 Fed. Cl 659 (2007); 79 Fed. Cl. 709 (2007); 79 Fed. Cl. 722 (2007)*; Pacific Gas and Elec. Co. v. United States,* 71 Fed. Cl. 205 (2006); 70 Fed. Cl. 128 (2006). Having litigated and lost these discovery issues before this Court, the government's present gripes are sour grapes.

In particular, most of the depositions the government references were sought by plaintiffs, and allowed by the Court, to address case-specific damages issues. Indeed, the same is true of purportedly "duplicative" interrogatories. For the most part, individual plaintiffs have propounded interrogatories asking about issues of particular application in their own cases. That type of discovery could not reasonably be avoided even if common procedures otherwise made sense going forward – which they do not, for the reasons noted above.

It should not be surprising that the discovery permitted by this Court in the spent fuel cases has been substantial. The cases entail a large government program that has cost many billions of dollars and that spans a period of more than a quarter century. Moreover, the stakes are large, as the government has breached its contracts with an entire industry causing many billions of dollars in damages.

Further, the government's claims of burden from duplicative discovery are misplaced. The government has produced documents via a common production web site. Thus, to the extent the government has faced (or will face) document requests that are duplicative of those previously propounded, the government has avoided (and will avoid) any additional burden from the duplicative nature of such requests. Similarly, duplicative interrogatories can hardly be a burden to the government, since if it has already answered an inquiry, it has that response "in the can" to be used if the same inquiry is posed again. The government also complains about duplicative depositions, but the government admits that depositions have largely been limited to four individuals. Govt. Mot. at 13. And if the government's references to the number of cases resolved (28) and the number of depositions it has defended (117) are correct, the government has only had to endure about four depositions per resolved case (and fewer if still-pending cases are also included). Such a paltry burden hardly warrants discussion of special procedures.

In addition, the government's complaints of discovery burden in these large cases can only properly be measured in comparison to the total discovery the government has seen fit to take from utilities. Although precise numbers are not readily available, it is apparent that the government has taken far more depositions of utility personnel and has called on utilities to produce far more documents than utilities have taken from the government. In *Dairyland*, for a recent example, the government deposed nine fact witnesses compared to the three deposed by the utility.

3. <u>Coordinated Discovery is More Likely to Hurt than Help Efficiency</u>

This Court's experience with coordinated proceedings has not been positive in fact-intensive cases like these. The government references prior efforts in the spent fuel cases and in the *Winstar*-related cases. Govt. Mot. at 19. Both experiences counsel

strongly against further efforts at coordinated proceedings. In the *Winstar*-related litigation, more than 120 cases were brought (most in the early 1990s) alleging breach of contract. *See generally California Federal Bank v. United States,* 39 Fed. Cl. 753, 754-58 (1997). The Court implemented "special case management procedures," including reassignment of all cases to a single judge. *Id.* at 756. Due to the dilatory conduct of the government and the sheer size and complexity of the combined litigation, the resolution of those cases was remarkably slow.

Similarly, the coordinated discovery and "lead" case process previously employed in the spent fuel cases also was ultimately not effective or efficient. The coordinated discovery was intended to allow prompt resolution of the issues raised in motions for summary judgment the government filed on the common issues of rate of acceptance and GTCC waste. But those issues were not resolved promptly, and after the initial common discovery process, which only involved the first 21 spent fuel cases to be filed, many more cases were filed, necessitating additional discovery by and for those plaintiffs. Moreover, as admitted by the government, Govt. Mot. at 12, the "lead" case process for resolving the government's summary judgment motions also did not resolve those issues. As we now know, the rate of acceptance and GTCC waste issues were not resolved until after a full trial on the merits in several different cases. And the rate of acceptance issue was decided in a case, *PG&E,* that was not even among one of the "lead" cases designated by the Court. Most importantly, the issues that were the subject of the prior common discovery in the first 21 spent fuel cases – rate of acceptance and contract coverage for GTCC waste – have now been definitely resolved. There is no need now for another common discovery exercise.

Furthermore, due, in part, merely to the number of utilities and counsel involved, the coordinated discovery was unwieldy (and that discovery was conducted among only 21 utilities). Also, that unwieldy process impeded the settlement of discovery disputes, which should be the hallmark of an efficient discovery process. Further, the heightened stakes of the coordinated discovery process – since every dispute was to be applied to every case – made every issue a big issue with big briefs and big proceedings.

There is no reason to expect that another round of "coordinated" discovery would yield any greater efficiency. This is particularly so because the government does not even suggest what coordinated discovery or other proceedings it now seeks. Other than invocation of the buzzword "coordination" and reference to the use of "a single Discovery Judge," the government fails to detail just what it proposes. The government apparently seeks to sell the concept of coordination without divulging the details of what that concept would entail, leaving those to be developed at some unspecified time and in some unspecified manner.

Contrary to the government's motion, the existence of conflicting decisions regarding discovery in the spent fuel cases should be neither surprising nor disturbing. The Court's discovery rules contemplate that the availability of discovery will vary depending on the nature of the specific issues arising in a case. *See* RCFC 26(b)(2)(C). In the same vein, the government's claims of the deliberative process privilege require individualized assessments in each case. In *Dairyland*, cited by the government, Govt. Mot. at 15-16, the Court explained that the qualified nature of the privilege required the Court to make a case-specific assessment of whether the plaintiff's need for the documents outweighed the government's interest in confidentiality. 77 Fed. Cl. at 335-36 (" . . .this Court is not [in] a position to 'end' repetitive litigation of the deliberative

process privilege . . . Rather, this Court's determination of Dairyland's motion to compel . . must nevertheless be considered in the context of this case."). The imposition of a coordinated discovery process cannot avoid the need for such case-specific determinations. Furthermore, given the government's propensity to re-litigate the same issues in multiple cases – including the rate of acceptance issue, the GTCC waste issue and other issues – the government is hardly in a position to point its finger at plaintiffs' counsel to complain about "Judge-shopping," Govt. Mot. at 4, or "relitigation of discovery issues," Govt. Mot. at 16. The government itself has surely led the field in "shopping" its requests for "coordination" or consolidation of the spent fuel cases repeatedly to seemingly every Judge of the Court.

The government's invocation of the recent Advisory Council Task Force proposal for a revised Related Case Rule, *see* Govt. Mot. at 18-19, is misdirected, but revealing. Surely one reason past efforts at coordinating this and other groups of related cases have failed is the lack of an effective Rule to govern management of these cases. Yet the new Rule proposed by the Advisory Council Task Force, which was significantly influenced by the multi-district litigation ("MDL") procedures, provides an improved mechanism for coordinated treatment of *common* issues – not coordinated treatment of largely case-specific issues such as remain in these spent fuel cases in the wake of the recent Federal Circuit decisions. Similarly, the MDL procedures, even where they apply, provide explicitly that after resolution of preliminary issues by the "transferee" MDL court, all cases involved in the MDL proceeding should be returned to the "transferor" courts for trial. Thus, under both the MDL procedures and the Task Force's proposed Rule, these cases would be ripe for case-specific damages determinations (by trial if necessary) now

that the rate of acceptance and other significant common issues have been resolved by the Federal Circuit.

4. Government Request for Expedited Disclosures by Plaintiffs is Without Merit

Perhaps most audaciously, the government requests that the Court order plaintiffs to each provide detailed damage claim, *and expert witness reports*, within 60 days of final resolution of the three spent fuel cases recently decided by the Federal Circuit. Govt. Mot. at 22. Having agreed to the stays in the many spent fuel cases (including this one), in part for its own benefit to not have its resources overtaxed, the government is in no position to complain that plaintiffs must now rush to provide RCFC 26(a) disclosures earlier or in any greater detail than would be the norm. RCFC 26(a), Appendix A, and the typical individual scheduling orders of the Court set forth procedures regarding the development and timing of those disclosures, and the government fails to justify departing from those regular procedures. For example, those procedures typically don't call for the submission of expert witness until after the completion of fact discovery, months after the exchange of RCFC 26(a)(1) submissions. Moreover, the government's proposal is remarkably one-sided. While the government calls for plaintiffs to rush to submit detailed damage claims and expert reports, the government proposes that it have no parallel obligations during this period and that it have another 60 days merely to propound discovery requests on plaintiffs and to suggest a "scheduling plan" that presumably would be convenient for the government. (Perhaps signaling what it has in mind by "coordinated" discovery against itself, the government's proposal does not provide for either Rule 26(a)(1) submissions by the government or an opportunity for plaintiffs to propound discovery requests on the government).

Plaintiffs should have an appropriate period to develop their damage claims in light of the Federal Circuit's recent resolution of the acceptance rate and other common issues, and that period may vary significantly depending on the circumstances of each utility (*e.g.* some utilities will likely have much larger damage claims than others may). As contemplated by Appendix A, the timing of disclosures and the development of a discovery plan should, in the first instance, be negotiated between counsel in individual cases. *See* Appendix A ¶¶ 3 and 5. Having made no effort to undertake such negotiations since the Federal Circuit's recent resolution of the three spent fuel cases, the government is in no position to argue that such negotiations would necessarily lead to inappropriate results.

5. <u>The Government's Motion is Procedurally Deficient</u>

The government's motion is procedurally problematic. The government requests that the Court act through a three-Judge panel to fashion a coordinated discovery plan, but the Court's rules do not provide for such a panel. The government invokes RCFC 40.2, but that provision requires the presence of "common issues of fact" and is to be invoked through the filing of a "Notice of Indirectly Related Case(s)." Here, the government has neither identified any common issues of fact nor filed the requisite notice. RCFC 40.1 provides for the transfer of cases either by agreement of the transferring and transferee Judges or by the Chief Judge, but those provisions do not provide for the transfer of discovery or other portions of a case to a Judge other than the one assigned.

The procedural problems with the government's motion are not mere technicalities. They reflect the fundamental wrongheaded approach of the government's motion – particularly in cases like these involving diverse and complex facts. Tradition

and the centuries of experience behind that tradition teach that the most efficient way to decide cases is one at a time, not through efforts at grand, "coordinated" proceedings. Our jurisprudence contemplates that truly "common" issues will become identified in the course of litigation of individual cases and that precedent will develop that will guide and, in some instances, ultimately control, resolution of those issues, including discovery issues. The spent fuel cases demonstrate this point rather than argue for a different paradigm. The Federal Circuit's recent resolution of the acceptance rate, GTCC waste and other issues will undoubtedly smooth resolution of the remaining spent fuel cases to a degree. And as more issues are litigated and resolved in individual cases, further litigation, such as the second round of cases being filed, will hopefully be smoother yet.

6. The Government Should Adopt a New Settlement Posture to Resolve these Cases

If the government is truly interested in litigation efficiency, it should focus on adopting a new settlement posture in light of the recent Federal Circuit rulings. Its failure to do so makes clear that its present motion is less concerned with efficiency than with imposing complexity and delay, to its own advantage.

To date, the government has refused to discuss settlement except on terms consistent with those in the settlement reached in *Commonwealth Edison Co. v .United States*, No. 98-621 C. That settlement was based, in large part, on the very slow 900 MTU per year acceptance rate set forth in the 1991 Annual Capacity Report, which has now been rejected by the Federal Circuit in *Pacific Gas and Electric Co.* The government will have to develop a new settlement posture consistent with the much more robust acceptance rate adopted by the Federal Circuit. Until it does so and engages in serious settlement discussions with utilities, the government's gripes regarding the burdens of the spent fuel litigation deserve little consideration by the Court.

For the foregoing reasons, the government's motion should be denied.

Respectfully submitted,

September 8, 2008

s/ Jerry Stouck
JERRY STOUCK
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
(202) 331-3100 (Telephone)
(202) 261-4751 (Facsimile)
*Counsel for Plaintiffs*
Texas Genco, LP, *et al.*

Of Counsel:
Robert L. Shapiro
GREENBERG TRAURIG, LLP

*WDC 371,677,439v1 9-8-08*